IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| *DAVID BUEHRLE,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 4:10-cv-00509-AGF |
| *CITY OF O'FALLON, MISSOURI, a* | ) | |
| *Municipal Corporation,* | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant City of O'Fallon, Missouri, by its attorneys, and hereby files this Memorandum In Support of its Motion for Summary Judgment.

### I.        STATEMENT OF THE CASE.

Plaintiff David Buehrle commenced this civil action on September 16, 2008 by filing a Petition in the 11th Judicial Circuit Court of Missouri (St. Charles County) against the City of O'Fallon, Missouri ("the City") alleging a single count of workers' compensation retaliation pursuant to Mo.Rev.Stat. § 287.780.  On March 5, 2010, plaintiff filed a first Amended Petition adding a claim that the City violated his First Amendment right to free speech under the U.S. Constitution and Missouri Constitution.  See, First Amended Complaint, Count II.  Plaintiff further alleged age discrimination pursuant to the Missouri Human Rights Act, Mo.Rev.Stat. § 213.055, and the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621-624.  See, First Amended Complaint, Count III and Count IV.

Defendant removed the matter to this Court on March 26, 2010, on the basis of original jurisdiction over Count II and Count IV and supplemental jurisdiction over Count I and III.

Pursuant to the Case Management Order, the discovery deadline in this cause of action was December 15, 2010 and discovery has been completed, with the exception of a 30(b)(6) deposition of defendant, which is the subject of a pending Motion for Protective Order filed by defendant for the reason that the topics plaintiff seeks to discover are not relevant and further, that defendant's employees have already testified to all information in defendant's knowledge on the requested topics. In addition, defendant has not yet deposed the plaintiff's designated expert. Pursuant to the Case Management Order, the deadline for filing dispositive motions is January 31, 2011. The Defendant's Motion for Summary Judgment is timely.

## II.      STATEMENT OF THE FACTS.

Plaintiff's claims essentially stem from allegedly adverse employment actions that occurred in 2008 and 2009. Plaintiff claims that he exercised rights under Chapter 287 of the Missouri Revised Statutes by filing a workers' compensation claim in 2007. He further claims that he engaged in First Amendment protected activities when he made a presentation to the Board of Aldermen of the City of O'Fallon, Missouri in January 2006 regarding corruption, mismanagement, and illegal activities within the City. Plaintiff alleges that in retaliation for making a worker's compensation claim and engaging in activity protected by the First Amendment, the City denied him a promotion to the position of Sergeant in January 2008 and June 2009, denied him a transfer to the position of detective twice in 2008, removed him from light duty on two occasions in 2008 in favor of employees who had not made workers' compensation claims and undertook a internal affairs investigation against him in February 2008. Additionally, plaintiff claims that he was reassigned to a less desired shift upon his return to work following his injury in retaliation for filing a workers' compensation claim. See Plaintiff's First Amended Petition, Count I, ¶¶ 12, 13 and 16; Count II, ¶¶ 2, 3, 4 and 5.

In addition, plaintiff has separately alleged a claim for age discrimination under the Missouri Human Rights Act (Count III) and the Age Discrimination in Employment Act (Count IV).  Specifically, plaintiff claims that he was denied promotion to the position of Sergeant in June 2009 because of his age.  See, Plaintiff's First Amended Petition, Count III, ¶¶ 2, 9 and 11; Count IV, ¶¶ 2 and 3.

For ease of analysis and evaluation of the plaintiff's legal claims, plaintiff's claims and corresponding alleged adverse employment actions are delineated below:

| COUNT | THEORIES OF RELIEF | ADVERSE ACTION |
|---|---|---|
| Count I | Workers' Compensation Retaliation | 1. Termination of Light Duty on 2 occasions.<br>2. 2008 Sergeant Promotion<br>3. 2009 Sergeant Promotion<br>4. January 2008 Detective Assignment<br>5. June 2008 Detective Assignment<br>6. 2008 Internal affairs investigation<br>7. Assigned to afternoon shift instead of day shift |
| Count II | First Amendment Retaliation | 1. Termination of light duty on 2 occasions<br>2. 2008 Sergeant promotion<br>3. 2009 Sergeant promotion<br>4. January 2008 Detective assignment<br>5. June 2008 Detective assignment<br>6. 2008 Internal affairs investigation |
| Count III | Age Discrimination (state) | 2009 Sergeant Promotion |
| Count IV | Age Discrimination (federal) | 2009 Sergeant Promotion |

As established herein, plaintiff has presented no admissible evidence that defendant's employment decisions were in violation of Chapter 287 of the Missouri Revised Statutes, prohibiting retaliation for making a workers' compensation claim, nor that the City violated plaintiff's First Amendment Rights.  Furthermore, plaintiff has presented no admissible evidence that the City discriminated against him on the basis of his age when it promoted someone other than plaintiff to the position of sergeant in June 2009.  Because plaintiff has failed to establish essential elements of each of his claims, the City is entitled to summary judgment on all counts alleged in Plaintiff's First Amended Complaint.

## III.    ARGUMENT

### A.    Summary Judgment Standards.

In reviewing this Motion for Summary Judgment, this Court must consider the pleadings, related documents, evidence, and all reasonable inferences in a manner most favorable to plaintiff.    Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).   The Supreme Court has emphasized that summary judgment serves an "integral part of the Federal rules as a whole which are designed 'to secure the just, speedy and inexpensive determination of every action'." Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Rule 56 must be construed with due regard for the rights of defendant to demonstrate prior to trial that the claims of plaintiff have no factual basis.  Celotex, 477 U.S., at 327.  As stated by the Supreme Court:

> In our view, the plain language of Rule 56(c) mandates the entry of Summary Judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S., at 322.

The Eighth Circuit has likewise recognized that summary judgment is consistent with the "statutory purpose in avoiding a useless, expensive, and time consuming trial where there is no genuine material fact issue to be tried." Lyon v. Board of Education of Charleston, 523 F.2d 340, 347 (8th Cir. 1975). In City of Mt. Pleasant v. Associated Electric Coop., 838 F.2d 268, 1273 (8th Cir. 1988), the Eighth Circuit recognized that Celotex and its progeny have empowered lower courts to actively use summary judgment as a vehicle for resolving cases:

> [A] trilogy of recent Supreme Court opinions demonstrates that we should be somewhat more hospitable to summary judgments than in the past. The motion for summary judgment can be a tool for great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact.

In the summary judgment context, the City is only required to "point out" that there is no evidence to support plaintiff's claims. Celotex Corp., *Supra*. In Heideman v. PFL Inc., 710 F.Supp. 711 (W.D.Mo. 1989), Judge Oliver recognized that the Supreme Court has "clearly advocate[d] a more liberal use of summary judgment." Id. at 713. Specifically:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will be the burden of proof at trial.

Id. at 714 (*quoting*, Celotex, 477 U.S. at 322). The ultimate burden lies with plaintiff to establish by admissible evidence the existence of a genuine issue of material fact. Comstock v. Consumers Markets Inc., 903 F.Supp. 1096, 1098 (W.D. Mo. 1996).

> "To survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy."

Putnam v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003) (*citing* Wilson v. Int'l Bus. Machs. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

Plaintiff must do more than simply show that there is some metaphysical doubt as to the existence of some material facts.  Comstock, *supra*.  Rather, plaintiff must come forward with "specific facts showing that there is a genuine issue for trial" and summary judgment is not defeated by simply demonstrating "some metaphysical doubt."  Id.;  Accord, Pierce v. Marsh, 859 F.2d 601, 604 (8th Cir. 1988) ("Where the party opposing a motion for summary judgment cannot establish an essential element of his case, summary judgment is proper.");  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986).  Because plaintiff has failed to establish sufficient evidence to support a claim for violation of his rights under Chapter 287 of the Missouri Revised Statutes, violation of his First Amendment rights or age discrimination, the City's Motion should be granted.

**B.**    **Plaintiff's Workers' Compensation Retaliation Claim**

Workers' compensation retaliation cases are statutory.   Fleshner v. Pepose Vision Institute, P.C., 304 S.W.3d. 81, 93 (Mo. 2010).  To establish a cause of action for retaliation under RSMo. 287.780, "the plaintiff must prove the following elements: (1) plaintiff's status as an employee of defendant before injury; (2) plaintiff's exercise of a right granted by the Act; (3) employer's discharge of or discrimination against the plaintiff; and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions." St. Lawrence v. Trans World Airlines, Inc., 8 S.W.3d. 143, 149 (Mo. App. E.D. 1999).  See also, Hayes v. Show Me Believers, Inc., 192 S.W.3d 706, 707 (Mo. banc 2006).

The requisite causality does not exist if the basis for the actions of the defendant are "valid and non-pretextual." Bloom v. Metro Heart Group of Saint Louis, Inc., 440 F.3d 1025,

1028 (8th Cir. 2006).  Plaintiff bears the burden of showing that the actions by the City are retaliatory. <u>Davis v. Richmond Special Road District</u>, 649 S.W.2d 252, 255 (Mo. Ct. App. 1983).  If the evidence "demonstrates that the employer had just cause for terminating the employment, other than for the employee's exercise of his rights under the Act, then the employee cannot recover for retaliation." <u>St. Lawrence v. Trans World Airlines, Inc.</u>, 8 S.W.3d 143, 150 (Mo. App. E.D. 1999).  The City need only show facts negating one of the elements of plaintiff's claim, as opposed to all four.  <u>Wehmeyer v. FAG Bearings Corp.</u>, 190 S.W.3d 643, 651 (Mo. App. S.D. 2006).

> **1.     Plaintiff Has Failed To Establish The Necessary Element That The Filing Of The Workers' Compensation Claim Was The Exclusive Cause Of Defendant's Actions.**

Defendant is entitled to summary judgment on Count I of plaintiff's First Amended Complaint because he has failed to establish that the filing of a workers' compensation claim was the *exclusive* cause for the allegedly adverse employment actions.  <u>Wehmeyer v. FAG Bearings Corp</u>, <u>Id.</u> at 651 (holding that the employer alleged facts that made it clear plaintiff could not prove the filing of a workers' compensation claim was the *exclusive* cause of defendant's actions, and therefore defendant was entitled to summary judgment).  In other words, plaintiff is required to establish evidence that the <u>only</u> reason he was twice sent home from light duty in 2008, did not get the sergeant promotions in 2008 and 2009, was not assigned to the detective bureau twice in 2008, was investigated for lying under oath in federal court in February 2008 and, finally, was assigned to the afternoon shift, rather than day shift in 2008, was because in the summer of 2007 he filed a workers' compensation claim.  The record is devoid of any evidence that this was the reasons, let alone the sole and exclusive reason.

In fact, plaintiff has not only failed to establish an exclusive causal connection between the employment events and his workers' compensation claim, he has alleged just the opposite by testifying that there were several additional reasons for the allegedly adverse employment actions.  See, Plaintiff's First Amended Complaint.  By his own testimony, the allegedly adverse employment actions were taken by the City for several reasons:  1) that plaintiff filed a workers' compensation claim; 2) that plaintiff gave a presentation to the Board of Aldermen in January 2006; 3) plaintiff's age (with regard to the promotions to Sergeant in both 2008 and 2009).  (SOF 31, 81, 82, 105, 124, 190).  Plaintiff further testified on several occasions that he does not know why the City took the alleged adverse employment actions.  (SOF 91, 106).  Clearly then, even when the facts are viewed in the light most favorable to plaintiff, he has produced no evidence that the filing of a workers' compensation claim is the *exclusive* cause of any allegedly adverse employment action.

The only evidence presented by plaintiff in support of his workers' compensation retaliation claims is the mere existence of a prior workers' compensation claim and the subsequent allegedly adverse employment actions.  Without more, plaintiff cannot establish an exclusive causal connection.  Timing alone is not sufficient.  Rather, the existence of those two facts merely establishes the separately required elements of a prima facie case of retaliation in violation of RSMo. 287.780: element (2) requiring a showing of plaintiff's exercise of a right granted by the Act; and element (3) requiring a showing of employer's discharge of or discrimination against plaintiff.  Establishing the second and third element, without more, does not thereby establish the fourth element requiring the exclusive causal connection.  As the court, in Hopkins v. Tip Top Heating and Plumbing Co. stated:

> Thus, the fact alone that a discharge follows the filing of a compensation claim for a work related injury does not prove a cause of action under § 287.780.

> Rodriguez v. Civil Serv. Comm'n, 582 S.W.2d 354, 356 (Mo.App.1979). There
> must be also a demonstrable exclusive causal relationship between the exercise
> of right and the discharge or other discrimination.  Hansome v. Northwestern
> Cooperage Co., 679 S.W.2d at 275.   Thus, if the evidence proves that the
> employer had just cause to terminate the employment other than for the exercise
> of right by the employee under the Workers' Compensation Law, then the
> employee does not recover under § 287.780. Arie v. Intertherm, Inc., 648 S.W.2d
> 142, 149[4] (Mo.App.1983).

85 S.W.2d 280, 284 (Mo.App.W.D. 1991).

Even when viewed in the light most favorable to plaintiff, the evidence does not establish a causal connection between his July 2007 workers' compensation claim, and the actions of the City in 2008 and 2009, much less an *exclusive* causal connection.  As set forth in section B.2. herein, the defendant had valid, non-pretextual reasons for its decisions pertaining to plaintiff. Because plaintiff has failed to satisfy the fourth element of a case for retaliation in violation of § 287.780, in that he cannot establish an *exclusive* causal connection between his filing of a workers' compensation claim and the allegedly adverse employment actions, and in fact has testified that the reason for the alleged adverse employment actions were undertaken by the City for varying reasons other than in retaliation for filing a workers' compensation claim, the City is entitled to summary judgment on Count I.

### 2.       The City Had Just Cause For Its Employment Decisions Other Than The Plaintiff's Exercise Of His Right Under RSMo 287.780

The allegedly adverse employment decisions plaintiff challenges in Count I were made by the City for valid and just reasons other than his exercise of his rights under RSMo 287.780.

### a.       Light Duty

The City began discussing the implementation of a light duty policy in 2006 when Robert Lowery was hired as the City Administrator.  (SOF 2, 22)  These discussions predated plaintiff's workers' compensation claim.  (SOF 12,22)  Mr. Lowery had previously been a police officer

with the City of Florissant for twenty-five years and that department had a light duty policy that limited the number of people on light duty to three.  (SOF 22)  The City had been experiencing an increase in the number of police officers on light duty and Mr. Lowery believed it necessary to limit the number of people on light duty at any given time.  (SOF 22)  A policy was initially drafted in October 2007, and implemented in January 2008.  (SOF 23, 24)  The policy limited the number of people on light duty to three and gave preference for light duty assignments to those officers who had been injured on-duty.  (SOF 25)  Light duty necessitated by pregnancy did not count toward the limit of three.  (SOF 26)

In June 2008, and in a further effort to limit the number of people on light duty, the policy was revised to give the Chief of Police discretion in awarding light duty to those employees whose injuries were not work-related.  (SOF 25)  The Chief of Police at the time, Jerry Schulte, understood the policy to mean that when counting the number of light duty positions filled, he would not count pregnancy-related light duty when determining awarding light duty for work-related injuries.  However, he understood that when determining availability of light duty with regard to a request for light duty stemming from a non-work-related injury, he would count the people on light duty for pregnancy as part of the total allowed number of three. (SOF 26)

Plaintiff was on light duty for several months beginning in June 2008.  (SOF 27)  The City did not consider plaintiff's injury work-related.  (SOF 27)  During his period of light duty, plaintiff had to give up his light duty slot on two occasions during the summer of 2008 because Chief Schulte determined another employee needed light duty and further determined that to allow plaintiff and the other employee to have light duty would exceed the maximum number of three.  (SOF 28, 29, 30)  Since plaintiff's injury was not considered to be work-related, he was

required to give up his light duty position for a week.  In addition, Chief Schulte was entitled, under the policy, to exercise his discretion in awarding one of the three light duty spots.  (SOF 28, 29, 30)

### b.    2008 Sergeant Promotion

A new process for promotion to sergeant was implemented in 2007 in order to remove the great degree of subjective discretion the Chief of Police had in the ranking process for promotion applicants.  (SOF 96)  The new process removed the Chief entirely from the ranking process and used an outside third party, the Missouri Police Chief's Association, to generate the final rankings.  However, in order to give the Chief some input and discretion into who was promoted in his department, the new policy allowed the Chief the unfettered and absolute discretion to choose from the top three candidates in the ranking.  (SOF 97)

Following the process, plaintiff finished first.  (SOF 100)  Chief Schulte did not recommend plaintiff for promotion in January 2008.  (SOF 101).  The City Administrator had indicated to the Chief that he would not approve a promotion of plaintiff if his name were submitted.  (SOF 98)  The City Administrator was unlikely to approve a promotion of plaintiff because the City Administrator distrusted plaintiff and believed plaintiff would not serve in a position of authority in the best interest of the City or the police department, but rather in his own self-interest.  (SOF 99)  Furthermore, the plaintiff and the City Administrator did not get along.  (SOF 44, 53)  Clearly, distrust of or dislike for an employee is a valid reason to not approve an employee's promotion to a supervisory position.  However, in this situation, the City Administrator did not make any decision because the Chief of Police did not submit plaintiff's name for consideration.

Regardless of the belief that the City Administrator would likely not approve the promotion of plaintiff, Chief Schulte submitted the name of Steve Landsness, another candidate ranked in the top three, because he was the best candidate for the job.  (SOF 102)  The Chief believed Landsness was a better candidate because plaintiff had lost the trust and respect of his fellow officers.  (SOF 102, 55, 64).  It is a valid promotion consideration that the person assigned to a leadership position engender trust and respect in those they are tasked to lead.  That Chief Schulte believed plaintiff lacked these qualities, while Landsness had them in abundance, is a valid and just reason to promote Landsness rather than plaintiff.

<strong>c.      2009 Sergeant Promotion</strong>

Another vacancy for sergeant occurred in 2009.  By that time, Chief Schulte had retired and Major Seibert was serving as the Interim Chief of Police.  (SOF 7, 108).  It is important to note that Interim Chief Seibert had not been employed by the City in any capacity in July 2007 when plaintiff was injured on the job and filed his workers' compensation claim.  (SOF 8, 12)

The same promotion list from the 2008 sergeant's promotion was still in place in 2009. Plaintiff was ranked first on the list, followed by Lawrence McClain and Kevin Barron (who moved up from fourth to third following the promotion of Steve Landsness).  The same policy was in place allowing the Chief to make his final selection for promotion from among the top three candidates based on any criteria he deemed important.  (SOF 108, 111, 113)

Interim Chief Seibert considered McClain and Barron to be stronger candidates than plaintiff because Seibert felt that plaintiff lacked the honesty and integrity that a supervisory position required and the he had a tendency to jump to conclusions.  (SOF 110, 113, 114, 116) Seibert's beliefs were based on his personal observations and investigations.

In 2008, Seibert was notified by plaintiff's sergeant that a citizen complaint against plaintiff might be forthcoming.  Initially, Seibert looked into the arrest of the citizen and notified plaintiff's sergeant that it appeared plaintiff had done nothing wrong.  However, and before even checking with his sergeant to find out the status of the possible complaint, plaintiff sent a scathing email to Seibert accusing Seibert of jumping to the conclusion that he had done something wrong and initiating a complaint against him.  (SOF 114)  That plaintiff was so quick to jump to the conclusion that he was somehow being mistreated by Seibert, without finding out the facts first, and further was willing to send such a disrespectful email to a member of the command staff, was of great concern to Seibert. (SOF 114)

Further, in February 2008, Major Seibert conducted an internal affairs investigation regarding an allegation that plaintiff had given false testimony in a federal court hearing.  (SOF 65, 66)  Although plaintiff denied his testimony was false, his explanations were not credible to Major Seibert.  (SOF 74)  Based on his investigation, Major Seibert concluded that plaintiff had provided false testimony under oath.  Major Seibert considered such conduct to be a serious breach of honesty and integrity and recommended plaintiff's termination.   (SOF 75, 80)  Although ultimately Seibert's recommendation of termination was not undertaken, Seibert continued to believe that plaintiff had given false testimony under oath after he became the Interim Chief of Police.  (SOF 75, 78, 79, 80)  Interim Chief Seibert's belief that plaintiff had given false testimony under oath led him to conclude that plaintiff was not the best candidate for the promotion to sergeant in 2009.  (SOF 115)

Clearly, Seibert's belief that plaintiff lacked honesty and integrity and that he jumped to conclusions without all the facts were valid and just reasons to choose a candidate other than plaintiff to promote to the supervisory position of sergeant.

### d.      January 2008 Detective assignment

In December 2007, a vacancy in the detective bureau occurred.  (SOF 83)  The lieutenant in charge of the bureau initially volunteered a list of his top five choices to fill the opening to the command staff.  In response, Major Seibert sent the lieutenant an email indicating that he should post the opening and allow everyone in the police department who wished to apply for the vacancy an opportunity to do so.  (SOF 84)

After all interested persons submitted their resumes, officer Dean Frye was selected to fill the vacancy in the bureau.  Dean Frye was selected because he had already been serving in the detective bureau as a warrant officer and had done an outstanding job filling that role.  (SOF 84, 85)  Plaintiff was not considered a good choice to fill the vacancy in the bureau because Chief Schulte believed that there were several detectives within the bureau that disliked the plaintiff and would not work well with plaintiff.  (SOF86)[1]

The decision to fill a vacancy with an officer who had been serving the bureau in a lesser role and doing an excellent job is a valid reason.  Furthermore, the Chief of Police's decision regarding the deployment of his personnel based on the potential for disruption of the smooth operation of one his units due to personality clashes is a valid, non-retaliatory reason.

### e.      June 2008 Detective assignment

In the summer of 2008 another vacancy in the detective bureau occurred.  From the officers who had indicated interest in the position, the lieutenant was asked by the command staff to provide a list of the five officers he considered would be the best fit for the position.  The lieutenant provided a list to the command staff that did not include plaintiff's name.  (SOF 88)

---

[1] Plaintiff has alleged that the choice of Dean Frye was based on Mr. Frye's friendship with Chief Schulte.  If true, such a reason is not discriminatory.

Because plaintiff's name was not on the selection list provided by the lieutenant, he was not considered by the command staff for the position.  Rather, the command staff selected an officer to fill the vacancy from the list provided by the lieutenant.  (SOF 89)  Clearly, not considering plaintiff for the position was a just and valid choice given that the lieutenant did not submit his name as one of his choices.

### f.     February 2008 internal affairs investigation

A complaint was filed against the plaintiff in early 2008 by Mark Henke, a former major with the police department.  The complaint alleged that plaintiff gave false testimony under oath in a federal court proceeding.  (SOF 65)  Chief Schulte considered an allegation that one of his officers lied under oath to be a serious allegation that required an internal affairs investigation to determine whether the allegation had merit.  (SOF 66)  In turn, Chief Schulte assigned Major Bill Seibert to conduct the internal affairs investigation.  (SOF 66)

During the investigation, Major Seibert determined that plaintiff was cross-examined in a federal court proceeding in January 2008 regarding a prior internal affairs investigation of plaintiff after a 1992 incident involving an accusation that plaintiff entered a  entering a citizen's trailer without a warrant and without the owner's permission.  (SOF 68)  During the January 2008 federal court suppression hearing, plaintiff was questioned about whether the 1992 complaint against him had been sustained and whether he had been disciplined.  (SOF 68, 73)  In response, plaintiff testified that the 1992 complaint was unsustained and that he had not been disciplined.  (SOF 68, 73)

Major Seibert reviewed a 1992 determination that the plaintiff had, in fact, entered the trailer without a warrant and without the permission of the owner.  (SOF 69)  Major Seibert further reviewed a 1992 disciplinary document found by Chief Schulte which reflected plaintiff

was given a five-day suspension, but was allowed to forfeit 40 hours of compensatory time in lieu of the suspension.  (SOF 69)  When Major Seibert interviewed plaintiff, he verified his signature was on the disciplinary document, but told Major Seibert that the discipline had been placed "in abeyance", meaning he did not have to serve the suspension.  (SOF 70, 71, 72) Plaintiff further admitted that at the time he gave testimony in federal court, he was aware of the issuance of the five-day suspension and that it had allegedly been held placed in abeyance.  (SOF 71)

Major Seibert determined that regardless of how the discipline against plaintiff was meted out, the fact remained that he had been disciplined and that the 1992 complaint was sustained.  (SOF 74)  As such, Major Seibert determined that plaintiff's testimony that the 1992 complaint was unsustained, and he had not received any discipline, was false.  (SOF 74, 75) Based on his conclusions, Major Seibert recommended plaintiff's termination for giving false testimony under oath and Chief Schulte agreed.  (SOF 75, 76, 77)  Ultimately, however, City Administrator Lowery did not approve the termination of plaintiff and, instead, recommended that plaintiff should receive a written reprimand for giving testimony that could be construed as less than accurate.  (SOF 78, 79)

The defendant's decision to undertake the 2008 internal affairs investigation was valid and just because an allegation against a police officer for lying under oath, regardless of the source of the complaint, is serious.  Failure to investigate such an allegation would jeopardize the credibility of all of the City's officers.  Furthermore, the investigation was conducted in a fair and impartial manner.  Plaintiff was interviewed and provided an opportunity to explain the reason he testified as he did.  Based on the transcript of his testimony in the federal court proceeding, the 1992 disciplinary document which plaintiff admitted contained his signature and

his own explanation during his interview, Major Seibert believed that plaintiff had lied.  Given that plaintiff was believed to have given false testimony under oath by then Major Seibert, the issuance of a written warning against plaintiff was not discriminatory, but was valid and necessary.

### g.      Shift Assignment

The police department of the City operates a day shift, an afternoon shift and night shift. Each year, in approximately January, shift assignments are made for the year.  (SOF 14)  In 2007, plaintiff had been assigned to the midnight shift.  He was injured in July of 2007, and while on light duty for the remainder of the year, he worked hours which corresponded to the day shift.  (SOF 15)

Officers indicate their shift preference by noting their first, second and last preference.  A list of preference priority is kept wherein officers who get their first choice move to the bottom of the list the following year and officers who got their last choice move up the list, improving their chance of getting their first or second preference the following year.   (SOF 16) Complicating shift assignments is the fact that the City tries to accommodate officers who have childcare needs or are taking coursework which necessitates a certain shift assignment.  (SOF 18)  Furthermore, spouses, such as plaintiff and his wife, cannot work the same shift.  (SOF 20)

Plaintiff complains that he was placed on the afternoon shift in January 2008, which he alleges was not his first priority.  However, plaintiff was not at the top of the preference list and there is no indication he was entitled to his first choice.  (SOF 16, 17)  It should be noted that plaintiff himself testified that he considers himself lucky that he has been assigned the afternoon shift each year since 2008.  (SOF 15)  Plaintiff has produced no evidence that he was entitled to be assigned the day shift.  Further, he has produced no evidence that his assignment to the

afternoon shift was for any reason other than the deployment needs of the police department, which are valid reasons for shift assignments.

**C.**   **Plaintiff's First Amendment Claims**

Plaintiff alleges in Count II that he was subjected to adverse employment actions in retaliation for having exercised his First Amendment right to free speech when he made a presentation to the Board of Aldermen of the City of O'Fallon on January 26, 2006.  (SOF 36)[2] However, plaintiff has failed to establish that the City has an established  policy or custom which caused the alleged constitutional violation and therefore, plaintiff cannot recover for an alleged constitutional violation against the City.   Furthermore, plaintiff's presentation to the Board of Aldermen was not speech protected by the First Amendment and therefore, plaintiff cannot recover for any alleged adverse employment actions that were allegedly taken as a result of his having given the presentation.

**1.**   **Plaintiff Has Failed To Allege A Policy Or Custom Of The City Responsible For The Alleged Constitutional Violation.**

Although plaintiff did not cite to 42 U.S.C. § 1983, this section is the mechanism by which an individual can sue a government entity for a violation of his constitutional right.  As this Court recently held, "It is well-established that for a municipality . . .  to be held liable under § 1983, a plaintiff must establish that a municipal policy or custom was the 'moving force [behind] the constitutional violation.'" Bush  2010 WL 5071330 at *3  *citing* Dahl v. Rice Cnty., Minn., 621 F.3d 740, 743 (8th Cir.2010).

---

[2] In April 2006, the City became a third class city under Missouri law and the Board of Aldermen were renamed the City Council.  Consequently, many witnesses refer to the Board of Aldermen and City Councilmen interchangeably.

Here, plaintiff only alleges that he made a presentation to the Board of Aldermen in January 2006 and that, as a result, the City, through the actions of the City Administrator, retaliated against him in the violation of his First Amendment right to free speech. See Plaintiff's Amended Complaint, Count II, ¶¶ 2, 5. However, plaintiff has failed to establish any evidence that the City had any policy of disciplining employees for exercising their First Amendment rights. The Eighth Circuit has held that "when the policy was simply to allow the employees to use their own discretion and judgment, the policy was not the equivalent of the municipality having given "official sanction" to the actions. A municipality's 'decision to rely on its employees' judgment is certainly not unconstitutional in and of itself, especially in an area where so many diverse fact situations will inevitably present themselves, and in which the exercise of particularized judgment is so important.'" Zumwalt v. City of Wentzville, 2010 WL 2710496 at *4 *citing* Dick v. Watonwan County, 738 F.2d 939, 942 (8th Cir. 1984).

## 2.    Plaintiff Has Failed To Establish A Prima Facie Case Of First Amendment Retaliation

Even if plaintiff had properly established evidence of a policy or custom of the City which gave official sanction to the actions of its employees, including City Administrator Lowery, plaintiff's First Amendment retaliation claim fails because his speech was not protected by the First Amendment. The Eighth Circuit, adopting the framework set forth by the Supreme Court in Mt. Healthy City School District v. Doyle, established the prima facie requirements of a First Amendment retaliation claim:

> To establish a prima facie case of retaliation, a plaintiff must allege and prove that:  (1) he engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against him; and  (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action.  If the plaintiff meets this burden, the burden

shifts to the defendant to demonstrate that the same employment action would have been taken in the absence of the protected activity.

Davison v. City of Minneapolis, 490 F.3d 648, 654-655 (8th Cir. 2007), citing Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977).

>    **a.    Plaintiff's First Amendment Retaliation Claim Fails Because He Did Not Engage In Activity Protected By The First Amendment.**

In determining whether speech is constitutionally protected, Plaintiff must establish that his speech was made as a citizen on a matter of public concern. Garcetti v. Ceballos, 547 U.S. 410, 417 (2006); Bush v St. Louis County, Missouri et al., 2010 WL 5071330 (E.D. Mo. 2010). If the answer to this question is no, then the employee has no First Amendment cause of action. Connick v. Myers, 461 U.S. 138, 147 (1983). In Garcetti, the Supreme Court specifically recognized that where employees are fulfilling their responsibilities to advise their supervisors on certain matters "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421. Question of whether a public employee's speech was made pursuant to his employment duties, and not as a concerned private citizen, as would render speech not protected by First Amendment, is not whether speech was made during employee's work hours, or whether it concerned subject matter of his employment; rather, it is whether speech was made pursuant to employee's job duties, or in other words, whether it was "commissioned" by the employer. Wright v. City of Salisbury, Mo., 656 F.Supp.2d (E.D. Mo.2009)

Plaintiff alleges that he made a presentation to the Board of Aldermen regarding "corruption, mismanagement, and illegal activities occurring within the City of O'Fallon." See Plaintiff's Amended Complaint, Count II, ¶ 2. However, Plaintiff's own testimony is that he had been assigned in July 2005, as a police officer, to conduct special investigations at City Hall,

reporting to the Mayor of the City, Donna Morrow.  (SOF 32)  Plaintiff further testified that he was requested by a member of the Board of Aldermen to report to them in January 2006 regarding the status of those investigations the he conducted within the course and scope of his employment.  Said investigations were the topic of his presentation at the January 2006 meeting for which he is claiming First Amendment protection.  (SOF 36, 38)

Clearly, the undisputed material evidence is that plaintiff's presentation to the Board of Aldermen, which he claims is protected by the First Amendment, was made pursuant to his assigned job duties as a police officer of the City.  Since it is indisputable that the very presentation that plaintiff alleges was protected by the First Amendment was an expression made pursuant to his job duties, plaintiff's speech is not protected by the First Amendment.

Another indicator of whether an employee's speech is a matter of public concern is whether the employee sought to inform the public about the issue on which he spoke or only contacted other employees.  Zumwalt v. City of Wentzville, 2010 WL 2710496 *1, *7 (E.D. Mo. 2010) citing Connick v. Meyers, 461 U.S. 138, 148 (1983).  If the employee's speech concerns "internal office affairs and was made within the workplace," and "his speech was directed only to his coworkers and supervisors and concerned issues personal to them," it is not of public concern and the court should dismiss the First Amendment speech claims.  Zumwalt, 2010 WL 2710496 at *8.

Here, Plaintiff spoke only to the Board of Aldermen regarding the internal investigations he had been conducting regarding certain allegations of wrongdoing by internal employees and former employees of the City of O'Fallon.  (SOF 36, 37, 38)  The meeting itself was held in closed session, meaning that it was not open to the public.  (SOF 37)  The meeting was not requested by plaintiff, but by the Board of Aldermen.  (SOF 36)  Furthermore, plaintiff himself

took active steps to ensure the information presented was not disseminated to the public by collecting the written report, from which he read verbatim, at the end of the meeting.  (SOF 39) Given the nature of the meeting and the refusal of plaintiff to allow the information he presented to be made a part of the public discourse, plaintiff is disingenuous in now claiming his presentation was made as a citizen on a matter of public concern and therefore entitled to First Amendment protection.  See Guilloty Perez v. Pierluisi, 339 F.3d 43 (1st Cir. 2003) (holding "Plaintiffs are hard pressed to elevate the First Amendment stakes by invoking the interests of the community in a public discourse that they appear to have done so little to foster.").

**b.**  **Plaintiff's First Amendment Retaliation Claim Fail Because There Is No Causal Nexus Between The Protected Activity And The Alleged Adverse Employment Action.**

The third required prong of a prima facie case of First Amendment retaliation requires plaintiff to establish a causal nexus between the protected conduct and the adverse action. Tyler v University of Arkansas Board of Trustees, 2011 WL 31515 (8th Cir.).  "Generally, 'more than a temporal connection is required to present a genuine factual issue on retaliation.'" Id at *5 citing Peterson v Scott County, 406 F.3d 515, 524 (8th Cir.2005).  "As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternative evidence." Id citing Sims v Sauer-Sundstrand Co., 130 F.3d 341,343 (8th Cir. 1997). "The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." Id.

Here, plaintiff alleges his protected conduct was the presentation he gave to the Board of Aldermen in January 2006.  See Plaintiff's Amended Complaint, Count II, ¶ 2.  However, the first alleged adverse employment decision did not occur until January 2008, almost two years later, when he was denied promotion to the position of sergeant, with all other alleged adverse

employment decisions following later.  As such, two years passed between the alleged protected conduct and the alleged retaliatory act, which renders any potential causal connection between the two to vanish.  Thus, plaintiff has failed to establish a prima facie case of retaliation.

Clearly then, plaintiff has failed to produce any evidence that the City had a policy that gave rise to any retaliation in violation of a constitutional right.  Further, the speech that plaintiff claims forms the basis for his First Amendment retaliation claim was not protected speech and therefore, plaintiff was not insulated from discipline or adverse employment actions stemming from his speech.  Finally, plaintiff has failed to establish a causal nexus between the alleged protected speech and the alleged adverse employment actions.  As such, plaintiff's First Amendment retaliation fails.  The City is entitled to summary judgment on Count II.

### D.   Plaintiff's Age Discrimination Claims Under The MHRA And The ADEA

Plaintiff alleges in Counts III and IV that he was denied promotion to the position of sergeant in June 2009 because of his age.  Count III alleges age discrimination in violation of the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. § 213.055 and Count IV alleges age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621-634.

Plaintiff's age claim in Count III and IV are limited to the June 2009 promotion to sergeant because it is the only promotion decision for which he filed a timely charge of discrimination with the Equal Employment Opportunity Commission and Missouri Commission on Human Rights.  28 U.S.C. § 626(d)(1)(b); Mo.Rev.Stat. 213.075.1; 28 U.S.C. § 626(d)(1)(b).  See also Dorsey v. Pinnacle Automation Company, 278 F.3d 830, 836 (in upholding summary judgment in favor of the employer on allegations of discrimination which occurred prior to 300 days before the charge filed with the EEOC and prior to 180 days before the charge filed with the

MCHR, the Court stated "The ADEA requires the filing of an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the act of discrimination, and the MHRA requires filing with the Missouri Commission on Human Rights within 180 days  of the discriminatory act.").  Plaintiff's Charge of Discrimination was filed with both the EEOC and the MCHR on June 18, 2009 alleging the denial of promotion to sergeant.  Therefore, plaintiff can only recover for adverse employment actions alleged to have been made on the basis of his age if, in the case of a claim under the MHRA, they occurred after December 20, 2008, and in the case of the ADEA, they occurred after August 22, 2008.  The only adverse employment action plaintiff alleges occurred after August 22, 2008 is the June 2009 sergeant's position, for which plaintiff was not selected.

The same analysis is used for age discrimination claims under the ADEA and the MHRA, and therefore, the federal decisions interpreting the ADEA are used when analyzing claims brought pursuant to the Missouri Human Rights Act.  Barekman v. City of Republic, 232 S.W.3d 675 (Mo.App. S.D. 2007); West v. Conoco Corp., 974 S.W.2d 554, 555 (Mo.App.1998).  In the absence of any direct evidence of discrimination, claims of discrimination are analyzed using the well-known burden shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973); see, Allen v. City of Pocahontas, 340 F.3d 551, 557 (8th Cir. 2003).  This methodology has been adopted for use in discrimination claims brought pursuant to the Missouri Human Rights Act.  Midstate Oil Co., Inc. v. Missouri Com'n on Human Rights, 679 S.W. 2d 842 (Mo. Banc 1984).  Under this framework, plaintiff has the initial burden of establishing a *prima facie* case of age discrimination.  Brown v. McDonnell Douglas Corp., 936 F.Supp. 665, 670 (E.D.Mo.1996); Girten v. McRentals, Inc., 337 F.3d 979, 981 (8th Cir. 2003); Hill v. St. Louis University, 123 F.3d 1114, 1119 (8th Cir. 1997).

In order to establish a *prima facie* case of age discrimination in a failure to promote case, plaintiff must establish:  (1) that he belongs to a protected group; (2) that he was otherwise qualified for the position; (3) that he was not promoted; and (4) that the employer promoted a younger person to fill the position.  Wingate v. Gage County School Dist., 528 F.3d 1074, 1079 (8th Cir. 2008) *citing* Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir. 2003).

If plaintiff is able to establish a *prima facie* case of discrimination, the burden then shifts to the City to demonstrate that the actions were taken pursuant to legitimate, non-discriminatory reasons.  McDonnell Douglas v. Green, supra; Reeves v. Sanderson Plumbing, 530 U.S. 133 (8th Cir. 2000); Girten v. McRentals, Inc., 337 F.3d 979, 982 (8th Cir. 2003).  The burden is one of production only, not proof.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 257, 260 (1981).  Once the employer articulates a legitimate, nondiscriminatory explanation for the action, the presumption of discrimination disappears entirely, and the charging party bears the burden of proving the respondent's proffered reason was pretext for discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, 508; McDonnell Douglas v. Green, supra at 804; Girten v. McRentals, id. at 982; Mayer v. Nextel W. Corp., 318 F.3d 803, 807 (8th Cir. 2003).  It is important to note the charging party bears the ultimate burden of persuasion at all times.  State ex rel. Kelley v. Sherwood Medical Industries, Inc. 729 S.W.2d 607, 610 *citing* Missouri Commission on Human Rights v. St. Louis County Board of Election Commissioners, 714 S.W.2d 873, 876 (Mo.App.1986); Texas Dept. of Community Affairs v. Burdine, supra at 253; Mayer v. Nextel W. Corp., supra at 807.

   1.   **The City Had A Legitimate Non-Discriminatory Reason For Its Decision To Promote Someone Other Than Plaintiff To The Position Of Sergeant In June 2009.**

The decision-maker with regard to the promotion in June 2009 was Acting Chief of Police Seibert. (SOF 107, 118) Chief of Police Seibert choose two other candidates to promote over plaintiff. He initially offered the position to Larry McClain, who was over forty years of age. (SOF 111, 112) When Mr. McClain turned down the promotion offer, Acting Chief Seibert offered the position to Kevin Barron, whom he believed to be the better candidate compared to plaintiff. (SOF 113, 116, 117)

Acting Chief Seibert believed Kevin Barron to be the better candidate because he found Barron to be more trustworthy and to better exemplify the qualities Seibert felt necessary to implement his vision of the police department (SOF 113, 116) As for plaintiff, there were two specific qualities that Seibert believed plaintiff lacked and, therefore, was not the best candidate to carry out Seibert's vision: he lacked honesty and integrity and he jumped to conclusions and in so doing, was willing to attack his command staff. (SOF 114, 115, 116) The serious and egregious actions by plaintiff that led Seibert to believe he jumped to conclusions and that he lacked honesty and integrity, are described in detail in paragraph B.2.c and B.2.f. herein.

In reviewing the City's promotion decisions, it should be noted employers have wide latitude to make business decisions. LaCroix v. Sears Roebuck and Company, 240 F.3d 688, 692 (8th Cir. 2001). In evaluating the City's decision, it is vital to note that "[t]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Girten v. McRentals, Inc., 337 F.3d 979, 982-983 (8th Cir. 2003) citing Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995). See also Day v. Johnson, 119 F.3d 650, 657 (8th Cir. 1997) ("Federal Courts are not self-appointed personnel managers, and they may not second

guess the fairness or wisdom of an employer's non-discriminatory, employment decisions"); Montana v. First Federal Savings and Loan Association of Rochester, 869 F.2d 100 (2nd Cir. 1999) (a federal court cannot substitute its judgment for an employer's business judgment.)  As stated previously, federal decisions interpreting the ADEA is used when analyzing claims brought pursuant to the Missouri Human Rights Act.  West v. Conopco Corp., supra.  The Missouri Human Rights Act prohibits intentional discrimination based on age, it does not prohibit employment decisions based on other factors, such as job performance, evaluations, personality conflicts, or even unsound business practices.  See Hill, supra at 1120.

That plaintiff emphatically disagrees with Chief Seibert's ultimate determination that plaintiff had lied under oath when he gave testimony in federal court in January 2008 is irrelevant.  Further irrelevant is whether, ultimately, Chief Seibert's conclusion in that regard is right or wrong.  Rather, all that is relevant is that Chief Seibert did not find plaintiff to be credible in his explanation for why he testified as he did and was of the opinion that plaintiff had lied under oath.  (SOF 74, 75)  Chief Seibert's opinion is clearly evidenced by the fact that he recommended plaintiff's termination as a result of the false testimony.  (SOF 75)  At the time he made the promotion decision in 2009, Chief Seibert still believed plaintiff had lied under oath and further was convinced that plaintiff jumped to conclusions and was willing to attack his command staff, as evidenced by plaintiff's email to Major Seibert.  Chief Seibert is free to make a promotion decision based on his beliefs regarding plaintiff's qualities such as honesty, integrity and trustworthiness.  Such reasons are legitimate and non discriminatory.

## IV.   CONCLUSION

For those reasons set forth above, Defendant City of O'Fallon respectfully request that this Motion should be granted in its entirety with an award of attorneys' fees and costs.

2780679\1                                              27

SANDBERG PHOENIX & von GONTARD P.C.


By:   /s/ Stacie A. Owens
      Thomas E. Berry, Jr., #38433MO
      Stacie A. Owens, #57655MO
      600 Washington Avenue – 15th Floor
      St. Louis, MO 63101-1313
      314-231-3332
      314-241-7604 (Fax)
      E-mail:  tberry@sandbergphoenix.com
               sowens@sandbergphoenix.com

      Attorneys for Defendant,
      *City of O'Fallon, Missouri*

### Certificate of Service

       I hereby certify that on the 31st day of January, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Debbie S. Champion
dchampion@rssclaw.com

Sarah K. Taylor
staylor@rssclaw.com


                         /s/ Stacie A. Owens